

IN THE

# Court of Appeals of Indiana

Demontre Lamont Boyd,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*



FILED

Aug 05 2026, 9:02 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

August 5, 2026

Court of Appeals Case No.
25A-CR-2071

Interlocutory Appeal from the Clark Circuit Court

The Honorable Bradley B. Jacobs, Judge

Trial Court Cause No.
10C02-2210-F6-1260

**Opinion by Judge Mathias**
Judges May and Felix concur.

**Mathias, Judge.**

[1] During a traffic stop of a vehicle driven by Demontre Lamont Boyd, a canine officer jumped into Boyd's vehicle and alerted to the presence of narcotics. Because of that alert, law enforcement officers determined they had probable cause to search the vehicle. The officers found marijuana and cocaine in the vehicle and the State subsequently charged Boyd with Level 6 felony possession of cocaine and Class B misdemeanor possession of marijuana.

[2] Boyd filed a motion to suppress the evidence obtained during the vehicle search, which the trial court denied. The court then granted Boyd permission to pursue an interlocutory appeal of that order, which our court accepted. On appeal, Boyd asks us to determine whether the canine search violated his Fourth Amendment rights and whether the search was unreasonable under Article 1, Section 11 of the Indiana Constitution.

[3] Concluding that the canine search violated both the federal and state constitutions, we reverse and remand for proceedings consistent with this opinion.

## Facts and Procedural History

[4] On October 1, 2022, Clarksville Police Department Officer Tyler Ash was parked on Eastern Boulevard when he observed a Chevrolet Impala drive past him. Officer Ash noted the driver's alarmed facial expression upon seeing the officer's patrol vehicle and the driver's tight grip on the steering wheel, with the driver having his hands in the ten o'clock and two o'clock positions. Officer

Ash inexplicably found the driver's facial expression, grip on the wheel, and hand positioning suspicious. He then pulled out onto the roadway and began to follow the Impala. Officer Ash saw the driver, later identified as Boyd, reach over into the area near his front passenger seat and the center console. Boyd then drove the Impala over the fog line.

[5] After seeing Boyd cross the fog line, Officer Ash initiated a traffic stop. Boyd abruptly stopped his vehicle in the middle of the lane of traffic on U.S. 31 South. The officer saw Boyd reaching over into the passenger compartment and ordered Boyd to show his hands. The officer walked up to Boyd's driver's side window and then directed Boyd to pull his vehicle over into the emergency lane at the side of the highway. Boyd moved his vehicle into the emergency lane and Officer Ash returned to his patrol vehicle to run Boyd's information. Officer Ash also requested a canine unit.

[6] Approximately thirteen minutes after Officer Ash had initiated the traffic stop, Officer Susan Woodard arrived on the scene with her canine partner, Officer Blitz. Officer Ash would later testify that he was still preparing the warning for the unsafe lane movement thirteen minutes after the stop.[1]

[7] When Officers Woodard and Blitz arrived on the scene, the officers decided to remove Boyd from his vehicle before deploying Officer Blitz for a free air sniff. Officer Woodard told Officer Colton Forman, who had also arrived to assist

---

[1] Officer Ash did not issue the warning or record the warning in his system.

with the traffic stop, to leave the driver's side door open if Boyd failed to shut it. Officer Forman then asked Boyd to step out of the vehicle so that the officers could speak to him. Officer Forman opened the driver's side door for Boyd to exit. Officer Forman then stood to the side of the door, kept his hand on the door frame, and held onto the door frame as Boyd exited the vehicle. To shut his driver's side door, Boyd would have had to ask the officer to remove his hold on the door and then push the door closed. *See* State's Ex. D (video from Officer Forman's body camera). Neither Boyd nor Officer Forman closed the driver's side door.

[8] Thereafter, Officer Woodard deployed Officer Blitz around the car's exterior. The officer left the canine on his lead. Officer Blitz began the free air sniff at the rear passenger-side bumper. The canine's breathing and body language changed after the dog reached the front passenger-side window. *See* State's Ex. B, Part 2. Officer Woodard believed that her canine's change in behavior indicated the presence of the odor of narcotics.

[9] Officer Blitz continued to sniff around the front of the vehicle to the driver's side. As the canine approached the front driver's side bumper, his behavior changed again, which Officer Woodard interpreted as another indication of the presence of the odor of narcotics. After Officer Blitz reached the open driver's side door, the canine circled around the open door and then jumped into the car while Officer Woodard continued to hold the canine's lead. Officer Blitz proceeded to the back seat, where he turned around and began to sniff at the center console. The canine gave his "final alert" at the center console by

straddling the console and assuming a "passive position." Tr. Vol. 2, pp. 9-10. Officer Woodard then returned Officer Blitz to her police vehicle. The canine sniff of the vehicle lasted less than one minute.

[10] Relying on the canine sniff alerting to the presence of the odor of narcotics, Officers Ash and Forman decided they had probable cause to search Boyd's vehicle. First, Officer Ash conducted a pat-down search of Boyd's person but did not find any contraband. The officers then searched the vehicle. Officer Forman found cocaine under the front passenger-seat floorboard mat. Officer Ash found marijuana in the center console and in the side compartment in the driver-side door.

[11] On October 4, the State charged Boyd with Level 6 felony possession of cocaine and Class B misdemeanor possession of marijuana. On June 13, 2025, Boyd filed a motion to suppress the evidence obtained during the vehicle search. Boyd argued the vehicle search violated his rights under the Fourth Amendment and Article 1, Section 11. Specifically, Boyd argued that the traffic stop was "not supported by reasonable suspicion of any violation of the law" and that the officers lacked probable cause and/or reasonable suspicion to search his vehicle. Appellant's App. Vol. 2, p. 94. Boyd also argued that the traffic stop was unlawfully prolonged to allow for a canine sniff. Finally, Boyd claimed that the canine's entry into the vehicle, which was facilitated by Officer Woodard, constituted an unconstitutional warrantless search.

[12]     The trial court held a hearing on Boyd's motion. During the hearing, Officer Woodard testified that she was a certified canine trainer and had been a canine handler for seven years. Tr. Vol. 2, p. 5. She also described how a canine conducts a free air sniff and how a canine alerts to the presence of the odor of narcotics. However, Officer Woodard did not testify concerning Officer Blitz's specific training.

[13]     Officer Woodard also described Officer Blitz's behavior while conducting the free air sniff outside of Boyd's vehicle. The officer testified that she kept Officer Blitz on his lead but allowed "him to lead the way." *Id*. at 8. At the front passenger side of the vehicle, Officer Blitz had his first "indication to the presence of a narcotic odor." *Id*. The canine then "showed another indicator that he smelled the presence of a narcotic odor at the front bumper." *Id*. at 9.

[14]     Officer Woodard testified that an indication is different than an alert. *Id*. at 18. The officer gave her opinion concerning whether an "indication" was enough to establish probable cause. On cross-examination, Boyd's counsel asked:

> Counsel: So indication, not enough to establish probable cause is it[?]
>
> Woodard: That's incorrect[.]
>
> Counsel: You think an indication is enough to conduct a warrantless search of somebody's car[?]

> Woodard: If he is not able to get to [the] source, which he was not able to get to [the] source at the passenger front side of the vehicle[.]

*Id.*

[15] The officer explained that a canine alerts at the "source." *Id.* at 23. She stated that Officer Blitz "gave [her] several indications and where he got to the point where he could follow his nose to the source, he did so, which is legal[.]" *Id.* at 24. Officer Woodard believed that, because Officer Blitz twice indicated to the presence of the odor of narcotics, it was appropriate for Officer Blitz to then jump into Boyd's vehicle where he gave an "alert" at the source of the odor. *Id.* at 23-24.

[16] But the officer also implicitly agreed that the two indications outside of Boyd's vehicle by themselves, did not give the officers probable cause to search. Specifically, during cross-examination, Officer Woodard agreed with defense counsel's statement that

> [i]f the canine officer had not alerted on the center console, you would not have had probable cause and the officers on scene would not have had probable cause to search the vehicle . . . .

*Id.* at 28. Officer Ash also believed that Officer Blitz's alert to the center console of the vehicle gave the officers probable cause to search the vehicle. *Id.* at 56. Specifically, Boyd's counsel asked:

No independent reason whatsoever for the search, right. No other reason you would have probable cause to search his car besides the alert to the center console of his vehicle[.]

*Id*. Officer Ash replied, "[c]orrect[.]" *Id*.

[17] On July 15, the court entered a written order denying the motion. The court found that Officer Ash's observations of Boyd's unsafe lane movement and furtive movements justified the investigatory stop, and the "length of the stop [was] perfectly appropriate under the totality of the circumstances." Appellant's App. Vol. 2, pp. 120-21. Concerning the canine free air sniff and entry into Boyd's vehicle, the court found:

Officer Woodard testified several times that her canine "indicated" to the presence of contraband during the free air sniff. She described this as the canine finding the scent, losing it, then finding it again. The "indicating" is different from "alerting" and itself is not determinative of much. However, the "indicating" behavior of craning his neck, changing his breathing pattern, and changing his body language told Officer Woodard there was contraband near. The canine then proceeded to follow his nose and through the open door, entered the vehicle. Once inside the vehicle, he continued to sniff, finally alerting on the center console. This "alerting" behavior is indicative of the canine finding the source of the odor, and not just detecting the odor in the environment. And this behavior gives rise to probable cause for a vehicle search.

*Id.* at 121-22.

Boyd requested permission to file an interlocutory appeal of the order denying his motion to suppress. The trial court certified its order for interlocutory appeal, and our court accepted jurisdiction.[2]

## Standard of Review

Boyd contends the trial court erred by denying his motion to suppress. Our standard of review for such a claim is as follows:

> Trial courts enjoy broad discretion in decisions to admit or exclude evidence. *Robinson v. State*, 5 N.E.3d 362, 365 (Ind. 2014). When a trial court denies a motion to suppress evidence, we necessarily review that decision "deferentially, construing conflicting evidence in the light most favorable to the ruling." *Id*. However, we "consider any substantial and uncontested evidence favorable to the defendant." *Id*. We review the trial court's factual findings for clear error, declining invitations to reweigh evidence or judge witness credibility. *Id*. . . . If the trial court's decision denying "a defendant's motion to suppress concerns the constitutionality of a search or seizure," then it presents a legal question that we review de novo. [*Id*].

*Marshall v. State*, 117 N.E.3d 1254, 1258 (Ind. 2019).

In *Marshall*, our supreme court observed that

> [t]raffic stops, for even minor violations, fall within the protections of the federal and state constitutions. When a law enforcement officer stops a vehicle for a suspected traffic

---

[2] We held oral argument in this case at Hoosier Boys State at Trine University on June 18, 2026. We extend our gratitude to Jerry Wagenblast, Dr. Tony Kline, and Chuck Mason for their kind hospitality. We also thank the attorneys for the excellence of their written and oral advocacy.

infraction like speeding, that officer seizes the vehicle's occupants under the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution; and that traffic stop must pass constitutional muster. *Heien v. North Carolina*, 574 U.S. 54, 135 S. Ct. 530, 536, 190 L.Ed.2d 475 (2014) (citing *Brendlin v. California*, 551 U.S. 249, 255-59, 127 S. Ct. 2400, 168 L.Ed.2d 132 (2007)); *Meredith v. State*, 906 N.E.2d 867, 869 (Ind. 2009) (Fourth Amendment); *State v. Quirk*, 842 N.E.2d 334, 339-40 (Ind. 2006) (Article 1, Section 11). . . . Even though the Fourth Amendment and Article 1, Section 11 share parallel language, they part ways in application and scope. The Indiana Constitution sometimes affords broader protections than its federal counterpart and requires a separate, independent analysis from this Court. *[M.D.] v. State*, 108 N.E.3d 301, 304 (Ind. 2018).

*Id.*

## Boyd's Fourth Amendment Argument

[21] The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated" and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." "The fundamental purpose of the Fourth Amendment is to protect the legitimate expectations of privacy that citizens possess in their persons, homes, and belongings." *State v. Parrott*, 69 N.E.3d 535, 541 (Ind. Ct. App. 2017), *trans. denied*.

[22] "In general, the Fourth Amendment prohibits searches and seizures conducted without a warrant that is supported by probable cause." *Id*. (quoting *Mullen v. State*, 55 N.E.3d 822, 827 (Ind. Ct. App. 2016)). "As a deterrent mechanism, evidence obtained without a warrant is not admissible in a prosecution unless the search or seizure falls into one of the well-delineated exceptions to the warrant requirement." *Mullen*, 55 N.E.3d at 827.

> The "automobile exception" to the warrant requirement allows police to search a vehicle without obtaining a warrant if they have probable cause to believe evidence of a crime will be found in the vehicle. *Brinegar v. United States*, 338 U.S. 160, 164, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949); *Carroll v. United States*, 267 U.S. 132, 153-54, 45 S. Ct. 280, 69 L. Ed. 543 (1925). This doctrine is grounded in two notions: 1) a vehicle is readily moved and therefore the evidence may disappear while a warrant is being obtained, and 2) citizens have lower expectations of privacy in their vehicles than in their homes. *California v. Carney*, 471 U.S. 386, 391, 105 S. Ct. 2066, 85 L.Ed.2d 406 (1985); *South Dakota v. Opperman,* 428 U.S. 364, 367, 96 S. Ct. 3092, 49 L.Ed.2d 1000 (1976).

*State v. Hobbs*, 933 N.E.2d 1281, 1285 (Ind. 2010). "Probable cause is 'not a high bar,' and is cleared when the totality of the circumstances establishes 'a fair probability'—not proof or a prima facie showing—of criminal activity, contraband, or evidence of a crime.'" *Hodges v. State*, 125 N.E.3d 578, 581-82 (Ind. 2019) (quoting *Kaley v. United States*, 571 U.S. 320, 338, 134 S. Ct. 1090, 188 L.Ed.2d 46 (2014); *Illinois v. Gates*, 462 U.S. 213, 235, 103 S. Ct. 2317, 76 L.Ed.2d 527 (1983)).

A canine sniff conducted during a lawful traffic stop is not itself a search under the Fourth Amendment. *Hobbs*, 933 N.E.2d at 1286. A reliable canine alert may establish probable cause to search a vehicle. *Id*. Whether the canine's alert establishes probable cause depends on the dog's reliability and the surrounding circumstances, not on rigid evidentiary requirements. *Florida v. Harris*, 568 U.S. 237, 246-48, 133 S. Ct. 1050, 185 L.Ed.2d 61 (2013).

In *Harris*, the Supreme Court considered "how a court should determine if the 'alert' of a drug-detection dog during a traffic stop provides probable cause to search a vehicle." 568 U.S. at 240. Ultimately, the Supreme Court upheld the use of a trained canine to establish probable cause but also concluded that issues surrounding the use of canine officers involves a highly fact-sensitive inquiry. *Id*. at 246-47. The Court listed several factors courts can consider to determine a canine's reliability, including the canine's training and proficiency in locating narcotics. *Id*. at 246.

The State bore the burden to prove that the officers' entry into Boyd's vehicle was constitutional; however, the State did not present any evidence concerning Officer Blitz's training and/or certification. Officer Woodard testified that she is a certified canine trainer, but the only evidence concerning Officer Blitz's training was Officer Woodard's explanation to Boyd during the traffic stop that the canine was trained to detect the odor of certain narcotics. Given the lack of evidence concerning Officer Blitz's training and proficiency at detecting narcotics, Officer Woodard's understanding of Officer Blitz's indicating-versus-alerting behavior is of utmost importance to our resolution of this case.

A canine officer's behavior necessarily requires interpretation by a trained human partner, and canine officers exhibit varying behavior depending on their training. *See, e.g.*, *McKinney v. State*, 212 N.E.3d 697, 704 (Ind. Ct. App. 2023) (describing the canine's "bracketing" behavior), *trans. denied*. In *McKinney*, the canine briefly lowered his back legs but did not sit, which was typically the canine's final alert response. *Id.* The canine's handler believed that the canine did not sit on the roadway because it was covered in "slush." *Id.* Because the officer's testimony established that she was trained to determine, based on the canine's behavior, when the canine had detected the odor of drugs, the fact that the canine "did not fully sit down as his final response [wa]s not dispositive." *Id. See also Florida v. Jardines*, 569 U.S. 1, 12-13 (2013) (Kagan, J., concurring) (observing that "drug-detection dogs are highly trained tools of law enforcement, geared to respond in distinctive ways to specific scents so as to convey clear and reliable information to their human partners").

Here, Officer Woodard described Officer Blitz's behavior while conducting the free air sniff outside of his vehicle as "indicating" the presence of the odor of narcotics, but the canine did not "alert" to the presence of narcotics until the canine was allowed inside the vehicle. Officer Woodard testified that an indication is different than an alert. Tr. Vol. 2, p. 18. The officer explained that a canine alerts at the "source." *Id.* at 23. She stated that Officer Blitz "gave [her] several indications and where he got to the point where he could follow his nose to the source, he did so . . . ." *Id.* at 24. However, the officer agreed with defense counsel's statement at the suppression hearing that

> [i]f the canine officer had not alerted on the center console, you would not have had probable cause and the officers on scene would not have had probable cause to search the vehicle . . . .

*Id.* at 28. Logically then, we must conclude, as did the trial court, that Officer Blitz's two indications during the free air sniff were not sufficient to establish probable cause to search Boyd's vehicle.

[28] Despite Officer Woodard's testimony and the trial court's finding concerning Officer Blitz's behavior during the free air sniff, the State argues that Officer Blitz's two *indications* to the presence of the odor of narcotics during the exterior free air sniff were sufficient to establish probable cause to search the vehicle's interior. *See, e.g.*, *Hardbaugh v. State*, 96 N.E.3d 102, 106 (Ind. Ct. App. 2018), *trans. denied*. But the State relies on cases that generally use the terms "indicate" and "alert" interchangeably and not as the actual terms of art that they are in the context of a free air sniff.

[29] The State does not argue any other evidence obtained before the free air sniff occurred would have allowed the officers to conclude that evidence of a crime might be found in Boyd's vehicle. Officer Ash did not believe that Boyd was impaired and there are many reasons that a driver might reach into the passenger compartment of a vehicle. Officer Ash initiated the traffic stop after Boyd's car crossed over the fog line, an extremely minor traffic infraction which is not an uncommon behavior for many motorists traveling on Hoosier roadways. On the specific facts and circumstances presented here, we conclude that, because the officers had no other reason to believe that narcotics would be

found in Boyd's vehicle before the free air sniff, Officer Blitz's two indications during the free air sniff by themselves were insufficient to establish probable cause.

[30] Citing the "instinctive entry" rule, the State claims that "[e]ven if Officer Blitz had not indicated on the car's exterior, . . . his entry into the car would not have violated the Fourth Amendment." Appellee's Br. at 16. The instinctive entry rule originated in *United States v. Stone*, 866 F.2d 359, 360-62 (10th Cir. 1989). In that case, law enforcement officers had reasonable suspicion that the defendant driver possessed narcotics. During the traffic stop, the canine on the scene "showed interest underneath the rear area of the car and at the passenger door, and then jumped in the open hatchback where [it] 'keyed' on a duffle bag . . . ." *Id*. at 361. The trained handler let the canine "go where [its] nose would take [it]." *Id*. When law enforcement officers searched the duffle bag, they found narcotics. The Tenth Circuit held that the canine's "instinctive actions" did not constitute a search within the meaning of the Fourth Amendment because the officers, who had reasonable suspicion to believe that the automobile contained narcotics, did not facilitate the canine's entry into the vehicle or encourage the canine to enter the car. *Id*. at 363-64. In subsequent cases, some federal and state courts have held that the instinctive entry rule applies only if law enforcement officers did not assist, facilitate, or create an opportunity for the canine to enter the vehicle. *See e.g., United States v. Winningham*, 140 F.3d 1328, 1329 (10th Cir. 1998).

[31] Recently, our court considered the instinctive entry rule in *Ocampo v. State*, 268 N.E.3d 823, 830 (Ind. Ct. App. 2025). In *Ocampo*, officers were watching for Ocampo's vehicle, because the vehicle was the subject of a drug investigation. 268 N.E.3d at 827. The officers observed the driver of the vehicle commit driving infractions and initiated a traffic stop. The officers removed Ocampo and his passenger from the vehicle. Neither the passenger nor the officer shut the passenger door of the vehicle. Thereafter, a canine officer performed an on-lead free air sniff of the vehicle's exterior. The canine officer "did not alert for the presence of narcotics during th[at] exterior sniff." *Id*.

[32] As the canine officer neared the open passenger door, the handling officer removed the canine's lead because the canine indicated his intent to enter the vehicle. *Id.* The canine officer then jumped through the open passenger door and, after sniffing the driver's seat, passenger seat, and the second row of seats, the canine eventually alerted to the presence of narcotics in the third row of seats and scratched at the door panel on the passenger side. *Id*. at 827-28. The canine's partner officer then leaned into the vehicle so that he was able to see where the canine was alerting. *Id*. at 828. The officers then removed the side door panel and saw a brown plastic bag under the vehicle's speaker. A wrapped package in that bag contained a substance that tested positive for the presence of heroin. *Id*.

[33] Ocampo appealed the denial of his motion to suppress the narcotics found during the vehicle search and argued in pertinent part that the canine officer's interior sniff violated his Fourth Amendment rights. Our court concluded that

the canine's handler, Officer Powell, had facilitated Officer Swag's entry into the vehicle.

> Officer Powell testified that he knew that Swag was about to jump into the vehicle and removed Swag's lead for the express purpose of allowing him to search inside. Officer Powell further explained that had Swag's lead not been removed, he would have gotten "hung up around armrests or the seats or stuff like that" and would not have been able to freely move around the vehicle. Tr. at 8. Thus, the act of removing Swag's lead necessarily facilitated the interior vehicle sniff and the trial court erred in reaching the opposite conclusion.

*Id.* at 832. Our court held that facilitating a dog's entry into a vehicle without first establishing probable cause constitutes an improper search. *Id.* at 835 (citation omitted). And our court reversed the trial court's order denying Ocampo's motion to suppress.

[34] We agree with the *Ocampo* panel's result but decline to apply the instinctive entry rule. Officer Woodard deployed her canine for the purpose of obtaining information and allowed the canine to enter Boyd's protected private space. *See Hardin v. State*, 148 N.E.3d 932, 945 (Ind. 2020) (acknowledging that "Hoosiers regard vehicles as private areas not subject to random police rummaging"). Where a human law enforcement officer lacks probable cause to enter a vehicle to search, there is no reason why a canine officer should be permitted to enter a vehicle to search, whether that entry is instinctive or not. It is more than reasonable to require trained handlers to prevent canines from entering vehicles that law enforcement officers lack probable cause to search.

[35] The record in this case establishes that before Officer Blitz conducted the free air sniff, Officer Woodard wanted to make it possible for Blitz to enter Boyd's vehicle. The officer told Officer Forman to leave the driver's side door of Boyd's car open if Boyd did not shut it. Officer Forman's body camera video shows that he opened the car door for Boyd, kept his hand on the door frame, and used his position adjacent to the door and in front of Boyd to make it difficult for Boyd to close the door. *See* State's Ex. D. We cannot conclude that a reasonable person in Boyd's position would have believed that he had the legal right or the officer's permission to shut the car door. The door was left open as Officer Woodard had directed. During the free air sniff, Officer Woodard did not make any attempt to prevent Officer Blitz from entering Boyd's vehicle.

[36] We agree with Boyd that "[i]t defies credulity to suggest that Detective Woodard did not manipulate circumstances to be sure that her canine could jump into Boyd's car and conduct a sniff test by directing officers to leave open Boyd's door." Appellant's Br. at 16. Therefore, even if we adopted the *Ocampo* panel's instinctive entry rule, because the officers manipulated Boyd into leaving the driver's side door open, Officer Blitz's entry into Boyd's vehicle constituted an improper search.

[37] For all of these reasons, we agree with Boyd that the warrantless vehicle search violated his Fourth Amendment rights.

## Boyd's Article 1, Section 11 Argument

[38] Boyd also claims the search violated Article 1, Section 11 of the Indiana Constitution, which provides that

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

"While almost identical in wording to the federal Fourth Amendment, the Indiana Constitution's Search and Seizure clause is given an independent interpretation and application." *Myers v. State*, 839 N.E.2d 1146, 1153 (Ind. 2005).

[39] "To determine whether a search or seizure violates the Indiana Constitution, courts must evaluate the reasonableness of the police conduct under the totality of the circumstances." *Id*. (internal quotation omitted). "[T]he totality of the circumstances requires consideration of both the degree of intrusion into the subject's ordinary activities and the basis upon which the officer selected the subject of the search or seizure." *Id*. (internal quotation omitted). Although there may well be other relevant considerations under the circumstances, our Supreme Court has explained that the "reasonableness of a search or seizure as turning on a balance of: 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or

seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs." *Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005).

**The degree of concern that a violation has occurred.**

[40] Officer Ash initiated the traffic stop because Boyd's vehicle crossed over the fog line, but the officer had no reason to believe Boyd was impaired or that he had committed any other offense. The officer did find it odd that Boyd stopped his car in the middle of U.S. 31 South after the officer initiated the traffic stop. But the officer had not observed any facts that would lead a reasonable person to conclude that Boyd possessed contraband. Therefore, when Officer Ash initiated the traffic stop and requested a canine officer, his degree of concern or suspicion that Boyd was concealing contraband in his vehicle was minimal. And when Officers Woodard and Blitz arrived on the scene, the law enforcement officers still had no other reason to believe that Boyd's vehicle contained narcotics.

[41] After Officer Blitz gave two indications to the presence of the odor of narcotics near Boyd's vehicle, law enforcement officers' degree of concern that the vehicle contained contraband increased. But we must consider *all* of the circumstances of the traffic stop and not just Officer Blitz's two indications during the free air sniff.

**The degree of intrusion**

[42] Next, Boyd claims that the degree of intrusion was high for a minor traffic infraction. We measure the degree of intrusion from the defendant's point of

view, considering the "intrusion into both the citizen's physical movements and the citizen's privacy." *Hardin v. State*, 148 N.E.3d 932, 944 (Ind. 2020).

[43] Officer Woodard and Officer Blitz arrived on the scene while Officer Ash was still completing the paperwork for the warning for unsafe lane movement. And the State contends that the degree of intrusion into Boyd's privacy was relatively low because a canine's exterior free air sniff is not a search. *See Thayer v. State*, 144 N.E.3d 843, 849 (Ind. Ct. App. 2020) (stating that a canine's free air sniff of a vehicle's exterior does not involve a significant intrusion on a person's privacy). "Likewise, a traffic stop typically amounts to a small intrusion on a citizen's ordinary activities." *Dunem v. State*, 254 N.E.3d 559, 571 (Ind. Ct. App. 2025), *trans. denied*.

[44] Although the request for a canine officer did not unreasonably prolong the traffic stop, the initial thirteen minutes was not an insignificant intrusion on Boyd's liberty where Officer Ash's only avowed purpose for the stop was to give Boyd a warning for crossing over the fog line. The officers also significantly intruded on Boyd's liberty when they removed him from his vehicle despite the relative insignificance of the alleged infraction, Officers Woodard and Forman then manipulated the scene to ensure that Boyd's car door remained open during Officer Blitz's free air sniff. Finally, Officer Blitz's entry into the vehicle through the open driver's side door was not an insignificant intrusion on Boyd's privacy.

**Law enforcement needs**

Boyd argues that there were no law enforcement needs justifying the request for a canine officer to conduct a free air sniff. Boyd was cooperative and the officers did not believe he was dangerous or impaired. Boyd argues that the officers had no reason to suspect that his vehicle contained evidence of a crime.

We agree with the State that generally the "needs of law enforcement to find evidence of drug activity is obviously high." Appellee's Br. at 20 (quoting *McKinney v. State*, 212 N.E.3d 697, 708 (Ind. Ct. App. 2023)); *see also, Austin v. State*, 997 N.E.2d 1027, 1036 (Ind. 2013) (holding that law enforcement needs are great when investigating drug trafficking). But under these specific circumstances, Officer Ash had no reason to suspect that Boyd was impaired or that his vehicle contained contraband. He witnessed Boyd drive his vehicle over the fog line and reach into the vehicle's passenger compartment or center console, both of which are very common driver conduct. The sole reason for the traffic stop was that Boyd had crossed over the fog line. On the record before us, we can easily conclude that the infraction for which Boyd was stopped did not endanger any other person or motorist. Simply said, Officer Ash had absolutely no reason to suspect drug activity before Officer Blitz was inside the vehicle and alerted on the center console of Boyd's vehicle.

**The totality of these circumstances leads us to conclude that the search of Boyd's vehicle was unconstitutional under Article 1, Section 11.**

Officer Ash stopped Boyd for a minor traffic infraction that is common driver behavior. The officer had no reason to suspect that Boyd was impaired or had

contraband in his vehicle before he requested a canine officer. Officer Blitz's entry into Boyd's vehicle after the officers facilitated his entry by impairing Boyd's ability to shut his car door was a significant degree of intrusion. We acknowledge a law enforcement officer's high degree of need to investigate drug activity, but this factor is not outcome determinative where the officer has no reason to suspect drug activity after the initial traffic stop and before manipulation of the scene to facilitate entry into the vehicle by a canine officer. Under the totality of these circumstances, we conclude that the officers' search of Boyd's vehicle was unreasonable, and therefore, violated Article 1, Section 11.

## Conclusion

[48] We hold, under these unique facts and circumstances, that the warrantless search of Boyd's vehicle was unconstitutional under the Fourth Amendment of the US Constitution and under Indiana Constitution. We therefore instruct the trial court to issue an order granting Boyd's motion to suppress. *See Ocampo*, 268 N.E.3d at 835.

[49] We reverse and remand for proceedings consistent with this opinion.

May, J., and Felix, J., concur.

ATTORNEY FOR APPELLANT
Matthew J. McGovern
Fishers, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Andrew M. Sweet
Deputy Attorney General
Indianapolis, Indiana